IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-50831
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN PAUL RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United District Court
for the Western District of Texas
(W-95-CR-89-1)
_____

August 27, 1998

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]


The defendant, John Paul Rodriguez, appeals his conviction for conspiracy and possession of marijuana. He alleges as error the district court's (1) instructions to the jury, (2) admission of certain "expert" testimony, (3) qualification of one witness as an expert, and (4) calculation of the amount of marijuana for sentencing purposes. Concluding that the court committed no reversible error, we affirm the conviction and sentence.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

John Paul Rodriguez owned and operated a body shop called Interstate Body and Paint in Round Rock, Texas. After conducting an investigation, the Narcotics Division of the Texas Department of Police Safety ("TDPS") and the Internal Revenue Service ("IRS") discovered that Rodriguez was involved in the trafficking of marijuana--transporting the narcotic from the Round Rock area to Missouri and Illinois--and that he was using the body shop as a front operation. Rodriguez was charged in a two-count indictment. Count 1 charged a conspiracy to distribute and possess marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Specifically, the indictment alleged that Rodriguez conspired to distribute and possess 100 or more kilograms of marijuana. Count 2 charged possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

Jose Luis Ortiz and Hall Antonio Rubio assisted Rodriguez with his drug trafficking from 1989 through mid-1995. Although named as coconspirators in the indictment, they are not parties to the instant appeal. Ortiz elected to stand trial with Rodriguez, was convicted, and his appeal dismissed as frivolous. Rubio pled guilty and handed up his two compadres to the government, serving as the government's star witness. Rodriguez was convicted of both counts and sentenced to concurrent terms of imprisonment of 188 months on each. He now appeals.

Rodriguez first complains that the district court erred when it instructed the jury that the government need not prove any particular quantity of drugs in order to obtain a conviction for conspiracy. The indictment charged Rodriguez with conspiring to "distribute and possess 100 kilograms or more of marijuana." During deliberations, the jury submitted a note inquiring "as to the amount he had to sell in order for it to be considered a conspiracy." The court responded, over Rodriguez's objections, that "while the indictment alleges a conspiracy involving 100 kilograms or more of marijuana, alleging the amount is unnecessary. It is not necessary that any amount be proven." The jury returned a guilty verdict shortly thereafter.

Section 841 provides for various statutorily enhanced penalties dependent upon the amount of narcotics proved to have been possessed by the defendant. See 21 U.S.C. § 841. The government sought application of the penalty set out in § 841(b)(1)(B)(vii)--mandatory minimum five years imprisonment and maximum 40 years for possession of more than 100 kilograms of marijuana. Rodriguez contends that the district court acted arbitrarily and capriciously when it withdrew the quantity issue from the jury's reach after having submitted it for consideration.

The district court, however, properly instructed the jury on the essential elements of a drug conspiracy. Although the court

quoted from Count 1 of the indictment--the conspiracy count that included the language concerning the quantity--the court never instructed the jury that the 100-kilogram quantity was an element of the charged offense. The law is well settled that "[q]uantity is not an element of the crimes proscribed by 21 U.S.C. § 841(a)(1) or 846, and only need be established for sentencing purposes." United States v. Castillo, 77 F.3d 1480, 1496 (5th Cir. 1996) (rejecting argument that 1,000 kilogram quantity alleged in indictment constituted element of offense). "Consequently, quantity need not be finally determined until the sentencing hearing when the district judge, applying a preponderance of the evidence standard, determines the quantity of the drugs involved in the offense . . . ." United States v. Watch, 7 F.3d 422, 427 (5th Cir. 1993); United States v. Valencia, 957 F.2d 1189, 1197 (5th Cir. 1992); United States v. Lokey, 945 F.2d 825, 836 (5th Cir. 1991); United States v. McCusker, 936 F.2d 781, 784 (5th Cir. 1991) ("Quantity is a sentencing concern."). The district court did not err when it clarified this point for the jury with its supplemental instruction.

B

Rodriguez next argues that the district court abused its discretion in admitting certain "expert" testimony. The government introduced into evidence conversations between certain participants of the drug conspiracy that had been captured on tape. Law enforcement agents then testified concerning the drug-related code

4

words spoken throughout the taped conversations. Specifically, Rodriguez maintains that the court allowed numerous law enforcement agents to offer their own interpretations and opinions of the defendants' use of common language and whole conversations under the guise of interpreting "drug code." According to Rodriguez, the agents thus encroached upon the province of the jury by offering "expert" opinions on matters well within the jury's ken. We review for abuse of discretion a district court's decision to allow expert testimony. United States v. Garcia Abrego, 141 F.3d 142, 172 (5th Cir. 1998).[1]

We frequently have allowed the introduction of expert testimony to help jurors understand specialized jargon, including that acroamatic within illegal drug trafficking. In United States v. Griffith, we explained that:

> [d]rug traffickers will often refer to ordinary items of commerce in lieu of illegal narcotics. It is implausible to think that jurors can understand such arcane allusions without expert assistance. Drug traffickers' jargon is a specialized body of knowledge, familiar only to those wise in the ways of the drug trade, and therefore a fit subject for expert testimony.

118 F.3d 318, 321 (5th Cir. 1997). We have thus held it proper for law enforcement agents to testify to the "'argot or seemingly secret jargon' used in [the drug distribution realm]." Griffith,

[1] "'The admission or exclusion of expert testimony is a matter left to the discretion of the trial court, and that decision will not be disturbed on appeal unless it is manifestly erroneous.'" First Nat'l Bank of Durant v. Trans. Terra Corp., 142 F.3d 802, 811 (5th Cir. 1998) (quoting Eiland v. Westinghouse Elec. Corp., 58 F.3d 176, 180 (5th Cir. 1995)).

118 F.3d at 322 (quoting United States v. Fuller, 974 F.2d 1474, 1482-83 (5th Cir. 1992)).

The scope of a district court's authority to allow such explication, however, is not unlimited. "[E]xpert testimony regarding the meaning of ordinary words, which the jury is in as good a position as the "expert" to interpret, must be excluded." United States v. Krout, 66 F.3d 1420, 1433 (5th Cir. 1995). Rodriguez has offered excerpts from the testimony of several different agents that he claims demonstrates that the agents' opinions concerned their personal interpretation of ordinary words that had no specialized meaning in the drug trafficking trade.

We need not address this issue, however, because the allegedly erroneous admission of expert testimony is subject to harmless error analysis. Griffith, 118 F.3d at 323, Krout, 66 F.3d at 1433; see also Fed.R.Crim.P. 52(a). "An error is harmless if the reviewing court is sure, after viewing the entire record, that the error did not influence the jury or had a very slight effect on its verdict." United States v. Rodriguez, 43 F.3d 117, 123 (5th Cir. 1995).[2] Even absent the agents' testimony concerning the taped

_____

[2]Rodriguez maintains that "overwhelming evidence" is only one factor to consider when determining harmlessness. We apparently have articulated two different standards for deciding whether an error is harmless. Fleming v. Collins, 917 F.2d 850, 855 n.6 (5th Cir. 1990). The first--labeled the "Chapman rule"--sets out that an error may be considered harmless only if it did not contribute to the verdict. Id. (referring to Chapman v. California, 386 U.S. 18, 24 (1967)). We articulated the second standard in Harryman v. Estelle, 616 F.2d 870, 876 (5th Cir. 1980) (en banc): error will be considered harmless if the remaining admissible evidence

conversations, the evidence of Rodriguez's guilt (if credited by the jury) was so overwhelming as to render the agents' testimony harmless, if not almost superfluous.  See id. (holding error harmless because of overwhelming evidence of defendant's guilt).

The prosecution introduced as evidence marijuana seized from Rodriguez's residence.  Government agents also seized from his house drug ledgers that set out the specifics of several drug transactions.  Furthermore, the jury heard the testimony of Hall Antonio Rubio, Roel Antonio Ortegon, Mark Dulaney, and Benito Encinia--men who were all involved with Rodriguez's drug distribution business.  Rubio testified extensively regarding his involvement with Rodriguez's drug-running business.  He said that Rodriguez recruited him in 1989 to sell marijuana.  He detailed how Rodriguez would load spare tires from the body shop with marijuana and drug money to smuggle each to their respective destinations. Ortegon, Dulaney, and Encinia all corroborated Rubio's testimony and added further specifics concerning his illegal activities. Dulaney testified with respect to the amounts of marijuana that he had purchased from Rodriguez, quantities that eventually increased to an average of 25 pounds per load.  Ortegon testified that he sold over 100 pounds of marijuana to Rodriguez and that he was cut out as the middleman when his supplier began to sell directly to

_____

overwhelmingly establishes guilt beyond a reasonable doubt. Collins, 917 F.2d at 855 n.6 (citing Harryman).  Assuming the impropriety of the agents' testimony, the district court's admission of that evidence was harmless under either standard.

Rodriguez. In the light of the overwhelming evidence of Rodriguez's guilt--hard evidence, such as the seized marijuana and the drug ledgers, and the testimony of those involved--any error in admitting the agents' opinion testimony must certainly be considered harmless.

C

Rodriguez also argues that the district court erred in allowing the expert opinion testimony of TDPS Trooper Gilvert Arredondo. Specifically, Rodriguez points to Arredondo's interpretation of one part of an intercepted call where the speaker said, "My running days are over," which phrase Arredondo interpreted as, "My drug smuggling days are over." Rodriguez argues that Arredondo could not have qualified as an expert because, at the time the conversation was taped, he had been working in the narcotics unit for only three to four months and had never received any formal training in interpreting drug code. Furthermore, Arredondo testified that he never had heard that particular phrase before.

Similar to the previous argument raised by Rodriguez, we need not address this complaint regarding Arredondo's qualifications because, even if erroneously allowed to testify as an expert, the remaining unchallenged evidence overwhelmingly indicates Rodriguez's guilt beyond a reasonable doubt. Furthermore, the speaker was Blankenship--neither a defendant nor a named coconspirator--and Rodriguez has failed to demonstrate how

Arredondo's interpretation of this tangential individual's remark conceivably could have contributed to the jury's verdict. If the district court committed any error in allowing Arredondo to testify as an expert, it was harmless.

D

As his final point of error, Rodriguez challenges the amount of marijuana the district court attributed to him at the sentencing hearing. The district court found that Rodriguez was responsible for 1050 pounds of marijuana, making his base offense level 28. On appeal, Rodriguez contends that the district court erroneously credited an "offhand hearsay remark" made by Rubio that lacked sufficient indicia of reliability. Rodriguez did not present this argument to the district court and we consistently have held that "a new argument raised for the first time on appeal, even if it concerns an issue considered by the trial court, will not be addressed unless it meets the plain error standard." United States for use of Wallace v. Flintco, Inc., 143 F.3d 955, 971 (5th Cir. 1998).

The district court did not clearly err, much less commit plain error, when it calculated the amount of marijuana attributable to Rodriguez for sentencing purposes. The court adopted the factual findings set out in the presentence report that reflected a statement made by Rubio to the case agent from which the 1050-pound figure is derived. Generally, "a presentence report . . . bears sufficient indicia of reliability to be considered as evidence by

9

the trial judge in making the factual determinations required by the sentencing guidelines." United States v. Alfaro, 919 F.2d 962, 966 (5th Cir. 1990). A sentencing court may adopt the facts contained in the PSR without inquiry if the defendant does not present rebuttal evidence. United States v. Puig-Infante, 19 F.3d 929, 943 (5th Cir. 1994). The burden is on the defendant to demonstrate the unreliability of the unfavorable sentencing information and "[o]bjections in the form of unsworn assertions do not bear sufficient indicia of reliability to be considered." United States v. Tolliver, 61 F.3d 1189, 1219 (5th Cir. 1995), *vac'd on another point*, 516 U.S. 1105 (1996); United States v. Angulo, 927 F.2d 202, 205 (5th Cir. 1991).

Rodriguez did not present any reliable evidence in opposition to Rubio's statement contained in the PSR that supports the determination that his base offense level is 28. Accordingly, the district court did not err in crediting Rubio's estimate that Rodriguez had distributed a total of over 1000 pounds of marijuana.

## III

For the foregoing reasons, Rodriguez's conviction and sentence are

A F F I R M E D.